## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## ASHLAND

Civil Action No. 08-59-HRW

AMANDA FERGUSON,                                                    PLAINTIFF,

v.                        **MEMORANDUM OPINION AND ORDER**

OCCIDENTAL FIRE & CASUALTY CO.,                      DEFENDANT.

This matter is before the Court upon the Plaintiff's Motion for Summary

Judgment [Docket No. 19] and the Defendant's Motion for Summary Judgment

[Docket No. 18].   The motions have been fully briefed by the parties [Docket Nos.

22, 23 and 25].   For the reasons set forth below, the Court finds that, there being

no issues of material fact, the Defendant is entitled to judgment as a matter of law.

The issue before the Court is whether Defendant Occidental Fire & Casualty

Company ("Occidental") is the primary insurer of the 1998 Chevrolet Lumina

which Plaintiff Amanda Ferguson was driving at the time of a motor vehicle

accident on March 19, 2006.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On Saturday, March 18, 2006, Plaintiff and her mother, Diana Kelly, went

to Premiere Auto Sales ("Premiere") where Kelly purchased the vehicle at issue in

this case.

While at Premiere, after looking at another vehicle, Plaintiff and her mother directed their attention to the 1998 Chevrolet Lumina [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 13-14]. Plaintiff and her mother left Premiere and returned shortly thereafter with Plaintiff's father, Kenneth Ferguson, as well as the title to Diana Kelly's Saturn SC2, which Kelly intended to trade in for the Lumina. After they returned to Premiere, Plaintiff and her father test drove the Lumina for about 10 minutes [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 26-27].

Kelly decided to purchase the Lumina, she executed the necessary sales documents. First, she signed the "Buyer's Guide," which had been displayed on the window of the Lumina [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 39]. Above Kelly's signature on this document is the statement "I HAVE READ AND RECEIVED A COPY OF THE BUYER'S GUIDE ON THIS VEHICLE" [Docket No. 18-3]. According to Kelly, she did not, in fact read the Buyer's Guide. This was not due to any action on the part of Premiere, but, rather, due to the fact that Kelly was "chasing" her granddaughter [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 44-45].

The second document signed by Kelly is a Used Vehicle Order [Docket No. 18-4]. This document includes information about the prices, taxes and fees

associated with the sale.   Specifically, Kelly was charged $99.00 for "Filing" and $177.00 for "Taxes".

Kelly's signature appears in two places on this document, as both "Customer" and "Buyer".   This document also contains a statement that the sign to has read the document and approves of the filing fees and taxes as set forth therein.  Again, Kelly did not read the document before signing it [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 46-52].

Premier's owner, John Mischel, testified that the filing fee referenced in the Used Vehicle Order is collected for the filing of the title documents with the county clerk's office.  He stated that the actual filing fee is $28.99; the remainder of the $99.00 is a charge collected by Premiere for the service of filing the documents on behalf of the buyer.  [Docket No. 18-13, Deposition of John Mischel, August 4, 2009, pg. 54].  In her deposition, Kelly testified that although she could not recall the specifics of the transaction, she understood that the extra money would have been given "for them to go to the courthouse" [Docket No. 18-12, Deposition of Diana Kelly, May 13, 2009, pg. 8].

Finally, Kelly signed paperwork relative to a warranty she purchased along with the vehicle [Docket No. 18-8].   Kelly is listed as the "Owner" on the application for the warranty.   Although Kelly admits that she read a portion of the

3

warranty, she denies having read it in its entirety prior to signing the same [Docket No. 18-11, Deposition of Diana Kelly, October 31, 2007, pg. 57].

With regard to insurance coverage, either Plaintiff or Kelly provided Premiere with the insurance card on the Saturn SC2 which Kelly was trading in for the Lumina [Docket No. 18-12, Deposition of Diana Kelly, May 13, 2009, pg. 26]. Mischel verified that the insurance card was contained in the file for the transaction [Docket No. 18-13, Deposition of John Mischel, August 4, 2009, pg. 74-75, 91-92]. Kelly testified that Premiere knew she had the requisite insurance [Docket No. 18-12, Deposition of Diana Kelly, May 13, 2009, pg. 8].

Title was not transferred to Kelly on that Saturday afternoon. The Lumina had been purchased by Premiere in late February 2006 at auction and Premiere had not yet received the title to the subject vehicle [Docket No. 18-13, Deposition of John Mischel, August 4, 2009, pg. 15-16]. However, Kelly took possession of the Lumina that afternoon.

The following day, March 19, 2006, the Lumina was involved in a single-vehicle automobile accident in which the driver, Plaintiff Amanda Ferguson, and the passengers, her daughter and boyfriend, were allegedly injured. As a result of the accident, Plaintiff, individually and on behalf or her daughter, filed a civil lawsuit in the Carter Circuit Court against the manufacturer of the Lumina,

4

General Motors and Premiere Auto Sales.[1]

Plaintiff also filed the instant civil action against Premiere's insurer Defendant Occidental, seeking a declaration as to whether Occidental is the primary insurer of the Lumina. Occidental removed the matter to this Court, pursuant to 28 U.S.C. § 1332.

Following the accident, the Lumina had to be tracked down in a salvage yard for inspection [Docket No. 18-13, Deposition of John Mischel, August 4, 2009, pg. 79-81]. As a result, the certificate of title was not issued to Diana Kelly until August 25, 2006 [Docket No. 18-7].

The parties have filed cross motions for summary judgment. Plaintiff argues that the title of the Lumina did not transfer from Premiere to Kelly and, as such, Premiere's insurer is responsible for coverage to it. Defendant argues that title did, in fact, transfer on the day of the sale and that Premiere satisfied the requirements of KRS 186A.220.

_____

[1] That state court suit is styled *Amanda Ferguson, individually and as natural parent and legal guardian of Ashley M. Ferguson, an infant and Travis Stephens v. General Motos Corporation and Genesis Unlimited, LLC d/b/a Premiere Motor Sales*, Carter Circuit Court, Case No. 07-CI-00077.

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party.  Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the nonmovant in an effort to determine if any genuine issues of material fact exist.  However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence  on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

The standard of review for cross-motions of summary judgment does not

differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad Co. v. U.S.,* 929 F.2d 240, 248 (6th Cir. 1991). The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

## III.  ANALYSIS

Concerning the transfer of possession of a vehicle, without simultaneous transfer of title,  KRS 186A.220 provides in pertinent part:

> When [a dealer] assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon. The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39-080 before delivering possession of the vehicle.

KRS 186A.220(5).

Occidental argues that Premiere satisfied the statute, thereby effectively transferring title to Dina Kelly on the day of the purchase. The Court agrees.

The first requirement is that of consent of the buyer to allow the dealer to

7

file the appropriate application to the county clerk for the title. Although the statute does not define what could constitute consent, common sense dictates that Kelly consented in this regard. The Used Vehicle Order indicates that both filing fees and taxes were collected at the time of sale. As Mischel testified, Kelly paid more than three times the amount of the filing for the service of filing, performed by Premiere. It would be illogical, if not absurd, for Kelly to do so if she intended to pay them on her own to the county clerk. Indeed, Kelly testified that although she could not recall the specifics of the transaction, she understood that the extra money would have been given "for them to go to the courthouse" [Docket No. 18-12, Deposition of Diana Kelly, May 13, 2009, pg. 8]. Notably, Plaintiff makes no argument in this regard in her response to Occidental's motion.

As for the proof of insurance, it was provided to Premiere on the day of the sale. Plaintiff argues that the dealer was required to personally call the insurance company to verify coverage. The statute contains nothing in this regard, nor is this Court aware of such a requirement nor has Plaintiff cited case law in this respect.

Plaintiff further maintains that *Gainsco Companies, et al., v. Gentry*, 191 S.W.3d 633 (Ky. 2006) is dispositive of this matter in her favor. In *Gainsco*, Defendant H&H Auto & Trailer Sales purchased a truck from another dealer in

Alabama.  The seller dealer could not transfer the certificate of title at the time

H&H took possession; nonetheless, H&H brought the truck to Kentucky for

resale.  A little over a week later, on a Saturday, Joe Booth purchased the ruck

from H&H.  He signed an application for a certificate of title and registration, a

credit application, a vehicle transaction record and a bill of sale.  Title, however,

could not be assigned to Booth at the time of the sale as it had not yet been

received from the dealer in Alabama.  Regardless, Booth took possession of the

truck that day.  *Id.* at 635.

A few days later, before title arrived from Alabama, Booth's son was

driving the truck and was involved in an accident.  The passenger in the truck,

Darrell Gentry, sustained serious injuries.   Gentry filed suit, alleging that H&H

was the owner of the truck at the time of the accident and that its insurer, Gainsco,

was the liable for primary insurance coverage. *Id.*

The Kentucky Supreme Court, in applying KRS 186A.220, stated that in

order to transfer ownership of a vehicle without simultaneously transferring

possession of the certificate of title, a dealer must satisfy two requirements.  First,

he must verify that the purchaser has obtained insurance on the vehicle before

relinquishing possession.  Second, he must obtain the purchaser's consent to file

the certificate of title and other documents on behalf of the purchaser.  *Id.* at 636.

9

The *Gainsco* Court held that H&H had not properly verified insurance coverage.   It pointed out that a mere assumption or knowledge of insurance does not suffice.   The Court did not explicitly list what forms of proof are satisfactory, but, instead, left open the possibility that proof of insurance may be obtained in various ways. *Id.*. at 638.

Unlike *Gainsco*, in this case, proof of insurance was furnished at the time of sale.   As Defendant points out, Premiere would have no other reasons to have Kelly's insurance card for the trade-in-vehicle, in its file unless it was furnished for this purpose.   Proof of insurance on another vehicle is sufficient to satisfy requirements for a transfer of ownership without a simultaneous transfer of title. *See, e.g., Auto Acceptance Corp. V. T.I.G. Insurance Company*, 89 S.W.3d 398 (Ky. 2002).

Plaintiff's reliance upon *Gainsco* is further flawed as that Court ceased its inquiry at the first requirement, holding that adequate Proof of insurance was lacking.   Specifically, in *Gainsco*, insurance coverage was never discussed by H&H and Booth.   Rather, H&H simply "knew" that Booth was insured by Kentucky Farm Bureau pursuant to prior dealings with him. *Id.* at 638.   Notably, H&H did not contact Kentucky Farm Bureau to verify coverage, nor did Booth provide any proof of insurance. *Id.*   Finding that the first requirement under KRS

10

186A.220 had not been satisfied, the Court stated "we need not address whether H&H obtained Booth's consent to deliver the titling documents to the county clerk." *Id.*

Plaintiff also makes much of the fact that Kelly did not actually read the purchasing documents. This is of no moment. "It is well-established law in Kentucky that 'one who can read and has had an opportunity to read a contract he signs must stand by the words of his contract.'" *Cecil v. Cecil*, 712 S.W.2d 353, 355 (Ky.App. 1986)(internal citations omitted). Kelly was given the opportunity to read the documents and chose not to do so. There is no indication in the record that at time of signing, Kelly was coerced or did not fully understand the import of her actions.

## IV. CONCLUSION

Plaintiff has not established any basis for declaring Defendant to the primary insurer of the vehicle at issue in this case. Defendant's insured took all the steps necessary by which to transfer ownership of the vehicle at the time of the sale, having verified insurance coverage and obtained consent to file the pertinent documentation.

Accordingly, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment [Docket No. 19] be **OVERRULED** and the Defendant's Motion for Summary Judgment [Docket No. 18] be **SUSTAINED**.

11

A Judgment in favor of the Defendant will be entered contemporaneously herewith.

This __17__ day of February, 2010.

Henry R. Wilhoit, Jr., Senior Judge